EFERT BERENDS, Appellee, v. C. F. BRADY, et al., Appellees, HANFORD MCNIDER et al., Appellants.

No. 42638.

FEBRUARY 5, 1935.

Smith & Feeney, for appellants Hanford McNider and May H. McNider, executors.

F. A. Ontjes and D. Voogd, for appellee Efert Berends.

Senneff, Bliss & Senneff, for appellees C. F. Brady and Nellie Brady.

R. J. Organ, for appellees Missouri Valley Pipe Line Co. and Northern Gas & Pipe Line Co.

RICHARDS, J.—On March 31, 1932, plaintiff filed in this action a petition in foreclosure upon a note and mortgage for $16,000, executed by C. F. Brady and wife. On May 7, 1932, plaintiff filed

an amended and substituted petition adding as defendants the executors of the estate of C. H. McNider, deceased, and as to these executors, alleging in substance, as follows: That their decedent was a member of a partnership doing business under the name of C. F. Brady, and that in 1920 the partners purchased the mortgaged real estate, receiving title in the name of C. F. Brady, and agreeing to pay plaintiff $23,550 as part of the purchase price; that as evidence of said partnership indebtedness the said C. F. Brady and wife executed the $16,000 note and mortgage sued on together with a note and second mortgage upon the same premises for $7,550; that the said partner C. F. Brady and representatives or executors of the partner C. H. McNider, on March 20, 1929, paid or caused to be paid on said $7,550 note and mortgage the sum of $5,550, plaintiff thereupon having surrendered and delivered said $7,550 note and mortgage on account of fraudulent representations made to him by said Brady that he and his wife were the sole parties responsible for said indebtedness, and that said second mortgage indebtedness was uncollectible, and on account of fraudulent concealment from plaintiff by said Brady that he and C. H. McNider, as partners, acquired, owned and operated the mortgaged premises and had jointly · agreed to pay the said indebtedness and were jointly and severally liable to plaintiff; that the plaintiff relied on said false and fraudulent representations, and that the sum of $2,000, with interest, remains unpaid upon said second mortgage; that it was not until the filing of plaintiff's original petition herein that plaintiff ascertained facts with which the existence of the partnership aforesaid could be established, and that as soon as plaintiff ascertained the evidence with which he could establish the cause of action set forth against said executors he promptly amended his petition and made the said executors parties; that the estate of C. H. McNider is open and solvent. By amendment, plaintiff alleged that C. F. Brady and said C. H. McNider were partners and joint adventurers in said transaction. The appellee seeks herein judgment against said executors in their capacity as such for the amount of said $16,000 note, and for said additional sum of $2,000 and interest, and that said mortgages be foreclosed.

The executors for answer deny that their decedent was a partner of, or joint adventurer with C. F. Brady, and deny personal liability of C. H. McNider or his executors. Further answering, the executors allege that plaintiff's claim and cause of action against

the estate of C. H. McNider, if any, is barred by the provisions of section 11972 of the 1931 Code of Iowa, in that C. H. McNider died on October 30, 1928, that administration was granted on his estate by the Cerro Gordo county district court, and these executors duly appointed, notice of which was given by publication as provided by law, proof of which was filed in the office of the clerk of said court on December 27, 1928, and in that no claim of any character whatever was filed in said estate by plaintiff within 12 months after the giving of said notice, and in that no facts are set forth in said petition or amendments thereto excusing plaintiff's said failure to file said claim, and no peculiar circumstances entitling plaintiff to equitable relief in respect thereto are set forth or alleged by plaintiff.

The case was tried in equity, and the district court found that plaintiff's cause of action was not barred by Code, section 11972, and entered a judgment against C. F. Brady and the said executors for the amount due upon said $16,000 note and mortgage, decreed a foreclosure of said first mortgage, and dismissed plaintiff's claim for $2,000 upon the second mortgage.

The executors have appealed from the judgment rendered against them, and the plaintiff later appealed from the dismissal of his claim for $2,000 upon the second mortgage. We will refer to the executors as appellants, and to the plaintiff as appellee.

There are but two questions involved:

First, did appellee successfully carry his burden of establishing peculiar circumstances entitling him to equitable relief from the bar of section 11972 of the Code?

Second, if the answer to the first question is yes, then did any such partnership or joint adventure in the subject-matter of this action exist between C. F. Brady and C. H. McNider as to render C. H. McNider personally liable upon the notes and mortgages in question?

Considering the first question, section 11972 of the Code is in the following words:

"11972. When claims of fourth class barred. All claims of the fourth of the above classes, not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district

or supreme court at the time of his death, or unless peculiar cir-
cumstances entitle the claimant to equitable relief."

Under the facts any claim of appellee against the appellants
would be a fourth-class claim, and the above statute would be
applicable.

What appellee pleads, as justification for relief from the
section quoted, is that it was not until after he filed his original
petition on March 31, 1932, that he ascertained facts with which
the existence of the alleged partnership could be established. In
his testimony he says that he had no knowledge with reference to
McNider being a partner with Brady until in March, 1932.

"The peculiar circumstances" on which appellee relies are
embraced substantially in the pleading and testimony just men-
tioned.

The transactions to be considered covered a period of many
years. On March 1, 1920, the deed from appellee to Brady and
the mortgages and notes involved had their delivery. During the
ten years previous thereto appellee had lived on the mortgaged land,
near Mason City, of which city Brady and McNider were residents.
Appellee transacted his business at the bank of which C. H. McNider
was president, and knew McNider. After March 20, 1920, appellee
has resided in the neighboring county of Butler, making more or
less frequent trips to Mason City. On March 1, 1929, appellee
still held both notes and mortgages and all interest previously
accruing had been paid. The testimony of Brady is that several
of the checks given appellee for interest were signed "McNider-
Brady by Brady"; this on account of Brady having conveyed an
undivided one-half interest in this land to McNider, the deed itself
bearing date March 13, 1920, and containing the words, "This
deed given subject to purchase money mortgages of $23,750.00".
The interest due March 1, 1929, not being paid, appellee sought
out Brady and was informed by him that he, Brady, was broke,
and that said interest would not be paid unless a deduction of
$2,000 was made in the principal of the second mortgage. Appellee
then returned home, consulted a banker at Aplington, and some
time about the first of April returned with the banker to Mason
City for a conference with Brady, who reiterated to them his
previous statements, whereupon appellee accepted the interest
accrued to March 1, 1929, and $5,500 cash, the latter amount being
in payment of principal of the second mortgage, and he also

received new coupon interest notes in connection with an extension of the time of payment of the first mortgage. In February or March, 1929, appellee knew of the decease of McNider.

For three years the matter ran along without further incidents until the interest due March 1, 1932, was not paid. Following said nonpayment, appellee, in Mason City, interviewed a representative of a corporation to which Brady had conveyed his interest in the land, but was unable to collect. Going back home, he consulted attorney Voogd and directed foreclosure of the mortgage. Afterwards appellee and Voogd in March, 1932, returned to Mason City, and consulted attorney Ontjes, who expressed a desire to look into the matter and who at a later date reported to appellee that he and Voogd believed McNider was a partner of Brady, but did not then know for sure. Appellee testifies that this was the first such information he ever had.

Appellee first filed a claim in the C. H. McNider estate on May 4, 1932, and filed a similar claim on May 7, 1932, and a petition for an allowance of claim on May 21, 1932, to which appellants' attorney entered appearance on May 26, 1932. Appellants gave notice of their appointment by newspaper publications on December 4, 11, and 18, 1928.

The price for which the land was conveyed by appellee to Brady was $37,750. In March, 1929, the value had dropped very appreciably.

Viewing the fact situation, we have, on the one hand, the appellee possessing a normal opportunity to investigate the alleged liability of McNider, whether in 1920 he was a partner in the land purchase. But he made no investigation and claims he was innocent of any such knowledge during a period of 12 years from the date of the mortgage and for a period of about 3 years and 5 months after the giving of the notice of administration. In this connection there was at least a suggestion to him, in the manner of signature on several checks he received for interest, that McNider had some interest in the land. Appellee disclaims noticing the signatures.

On the other hand, we have the appellee, guilty of no deception or fraud, so far as the record shows, called on, after the lapse of time indicated, to pay a deficit, magnified, because of this lapse of time, to the extent of any continued depreciation of value of the security. We say this because the failure of appellee to file

his claim deprived appellants of the right and opportunity of earlier realizing on the security.

The statute has barred the claim unless in view of the situation of the parties an exception should be made in favor of appellee. This exception cannot be made unless such relief is equitable. Such relief would not be equitable unless it would place both parties in a position of greater fairness than the position in which they would be with the claim barred.

Were the claim an unsecured debt, the delay in filing would cast on the estate no greater liability, as to the principal amount of the debt, than if filed within the statutory period.

On a secured claim, however, where the value of the security was depreciating, as in this case, the delay in filing does create a greater principal liability, caused directly by the delay in filing; the amount in dollars of added liability being measured by the depreciation of the security value during the period of delay.

In determining whether to afford appellee equitable relief from the bar of the statute, we do not find that he has shown greater equities than have the appellants. While he may speak the truth that he had no knowledge of the alleged liability of McNider, yet he was not entirely without information suggestive that McNider might be interested in the land, but appellee was unmoved to make any investigation. We have nothing but his testimony with reference to his lack of knowledge or notice of the alleged liability of McNider in sufficient time to properly file his claim.

The equities on the side of the appellants include the fact that removing the bar of the statute would impose on them a liability that did not exist during the year of administration, being whatever was the amount of the depreciation of the security during the period of the delay in filing the claim, all to be imposed on the executors innocent of any responsibility for the happening of the delay. Removing the bar would also impose upon the executors the burden of defending a claim involving transactions in 1920 grown more stale by the lapse of nearly three and one-half years after the granting of administration before the claim was asserted.

The equities supporting appellee's contention do not outweigh the equities to be considered on behalf of appellants. Appellee accordingly cannot be granted the equitable relief he prays. This leaves the parties where the law placed them, and the cause of action

528

of appellee against appellants was barred by section 11972 of the Code.

There is, of course, no necessity of discussing the merits of appellee's cause of action, as the above finding disposes of the issues submitted to us.

This cause is reversed on the appeal of appellants Hanford McNider and May H. McNider, as executors of the estate of C. H. McNider, deceased, and is affirmed on the appeal of appellee Efert Berends.

ANDERSON, C. J., and ALBERT, DONEGAN, and PARSONS, JJ., concur.